Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner. Oral arguments were waived by the Commission in this case.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Aegis Administrative Services as the servicing agent.
3. An employee-employer relationship existed between the parties at all relevant times.
4. The issues for determination before the Deputy Commissioner were whether plaintiff's heart condition was a compensable occupational disease, and if so, what benefits was he entitled to under the Act.
5. The parties stipulated the following exhibits into the record:
a. I.C. Forms 18, 33, and 33R, and
b. Seventy-seven pages of medical records.
 ***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a forty-nine year old, ninth grade educated male. He was employed as a truck driver with defendant. His duties included driving loads of wood chips and logs for $30.00 per load. Plaintiff was not required to load or unload the cargo, but only to strap the load and drive the truck.
2. Plaintiff's average weekly wage was $450.00 per week, yielding a compensation rate of $300.00.
3. On 4 August 1995, plaintiff experienced shortness of breath and difficulty climbing into and out of the truck. He first noticed these symptoms a week to ten days before 4 August 1995, but they had gradually worsened. Plaintiff reported these symptoms to Randy Cranford, his supervisor.
4. On 6 August 1995, plaintiff presented to Dr. A. P. Kitchin, his family physician, and related a four to six week history of intermittent left upper chest pain. Dr. Kitchin noted that plaintiff was morbidly obese with a history of hypertension. A chest x-ray revealed serious chronic congestive heart failure and atrial fibrillation.
5. On 10 August 1995, plaintiff presented to Dr. Philip J. Iuliano. Dr. Iuliano noted plaintiff's obesity and recorded a strong family history of coronary artery disease. Plaintiff's father died of a myocardial infarction at age forty-four. Dr. Iuliano expressed concern over plaintiff's episodes of resting chest pain, which sounded ischemic in nature.
6. On 14 August 1995, plaintiff underwent cardiac catheterization by Dr. Hall at Carolinas Medical Center. He was diagnosed with idiopathic congestive cardiomyopathy, atrial fibrillation, and hypertension. Following the procedure, plaintiff reported episodes of chest pain while leaning forward to put on his shoes or lying on his abdomen. On 3 September 1995, plaintiff presented at the emergency room of Carolinas Medical Center with symptoms of chest pain and irregular heart beat.
7. In response to questions from plaintiff, Dr. Iuliano corresponded to him on 3 November 1995, at which time he opined that due to the rapid onset of plaintiff's symptoms it was possible that a viral infection had injured his heart. Dr. Iuliano further stated that plaintiff's cardiomyopathy was idiopathic in nature.
8. By letter dated 29 April 1997, Dr. Iuliano reiterated that plaintiff's cardiomyopathy was idiopathic in nature, which means of unknown etiology or cause.
9. Defendant requested that Dr. Daniel Mark, a board certified cardiologist at Duke University Medical Center, review and evaluate plaintiff's medical records. After reviewing plaintiff's medical records, Dr. Mark opined that plaintiff's employment with defendant did not cause or aggravate plaintiff's condition, and that plaintiff's duties did not place him at an increased risk of contracting heart problems compared to members of the general public. There is no medical evidence of record even suggesting that plaintiff's work caused or aggravated plaintiff's condition, or that plaintiff's duties placed him at an increased risk of contracting heart problems compared to members of the general public. Based upon the competent evidence of record, the Full Commission finds that plaintiff's heart condition was not caused or aggravated by his employment with defendant, and plaintiff's duties did not place him at an increased risk of contracting heart problems compared to members of the general public.
10. On 11 April 1996, plaintiff returned to Dr. Kitchin, who noted that plaintiff had begun receiving Social Security disability benefits.
 ***********
The foregoing stipulations and findings of fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff has not contracted an occupational disease within the meaning of the Act. N.C. Gen. Stat. § 97-53(13).
2. Plaintiff did not suffer an injury by accident or specific traumatic incident on or about 4 August 1995. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Defendant shall pay the costs, including the expert witness fee of $500.00 to Dr. Daniel B. Mark.
 ***********
The Full Commission further enters the following:
 ORDER
On 2 July 1998, plaintiff filed an affidavit alleging negligence on the part of Aegis Administrative Services Insurance Company, defendant's servicing agent. The Commission's jurisdiction under the North Carolina Tort Claims Act is limited to claims alleging negligence against a State agency and its employee(s). There is no evidence of record to suggest any involvement by the State, negligent or otherwise, in plaintiff's employment or illness. The Full Commission DISMISSES plaintiff's negligence claim against Aegis Administrative Services Insurance Company. N.C. Gen. Stat. § 143-291 et al.
 *********** S/ ________________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ ______________________ THOMAS J. BOLCH COMMISSIONER